UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LASQUES (VACQUES) PRUDHOMME** | * | **CIVIL ACTION NO.  17-1344** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL IN HIS OFFICIAL CAPACITY, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] filed by defendant, Ouachita Parish Policy Jury.  The motion is opposed.  For reasons set forth below, it is recommended that the motion to dismiss be GRANTED.

### Background

On October 19, 2017, Lasques (Vacques) Prudhomme filed the instant civil rights complaint against numerous local entities and officials whom he contends are responsible for the death of his son, Brandon Jamal Reed, who, at the time, was in defendants' custody as a pretrial detainee.  Specifically, Prudhomme alleged that,

> [o]n October 26, 2016, Decedent Brandon Jamal Reed, was housed as a pretrial detainee at the Richwood Correctional Center.  While in court on October 19, 2016, Decedent Reed fell and struck his head and was transported to University Health Conway (formerly LSUHSC-Monroe/E.A. Conway Medical Center) in Monroe, Louisiana.  Decedent sustained a laceration above his right eye after falling down and striking his head.  As a result of the fall it was ascertained that the decedent was acutely ill and had been for numerous months.  He was then hospitalized for acute respiratory failure, acute heart failure, and was found to be in cardiogenic shock.  Considering the gravity of decedent's illness, he was then transported on October 24, 2016, to University Health – Shreveport where he died.  Decedent's history and autopsy findings show that he had been sick for a

      lengthy period of time and had a serious untreated medical problem; a reported fifty (50) pound weight loss over a five to six month period and a cough with productive sputum for three (3) weeks and a chronic infection with a superimposed acute pneumonia which lead to his death. According to the pathologist who performed decedent Reed's autopsy, these symptoms had been present for a lengthy period of time. During this period of time decedent Reed was under the care and control of the Ouachita Parish Correctional Facility which failed to properly care and appropriately address his medical needs. Subsequently, he was transported to the Richwood Correctional Center which also failed to properly care for and address decedent's acute medical needs. Decedent Reed made several requests for medical calls and for medical assistance; however, was denied by both facilities. Decedent, Reed suffered in agony awaiting medical assistance he never received from the Defendants. The conduct of all the Defendants demonstrated clearly a wanton disregard for decedent Reed's serious medical needs. The pathologist who performed decedent Reed's autopsy opined that he died from sepsis due to pneumonia from ongoing, underlying chronic health problems.

(Compl., ¶ A).

      Prudhomme asserted claims for wrongful death, "deliberate indifference," and a survival action under 42 U.S.C. § 1983 stemming from violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. He also alleged negligence and intentional tort claims under state law, including claims for assault and battery. Prudhomme seeks compensatory, special, punitive, and exemplary damages, plus reasonable attorney's fees, and expenses against the following named defendants: Jay Russell, Ouachita Parish Sheriff; Patrick Johnson, Warden; Donna Norman, Medical Director for Ouachita Correctional Center; the Ouachita Parish Police Jury; Richwood Correctional Center, L.L.C. (and its owners, William K. McConnell and John Creed); Warden Ray Henson; Myra Ross, Medical Director; and unknown XYZ Insurance Companies.

      On January 11, 2018, the Ouachita Parish Police Jury ("OPPJ") filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff filed his opposition on February 15, 2018. [doc. # 12]. OPPJ filed its reply on March 1, 2018. [doc. # 17]. Thus,

the matter is ripe.

## Analysis

I.  **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*

**II.    Discussion**

OPPJ raised two principal arguments in its motion: 1) plaintiff does not enjoy the procedural capacity to initiate the instant wrongful death and survival action under 42 U.S.C. § 1983; and 2) plaintiff's complaint contains insufficient facts to support a claim for relief. The court will address each argument, in turn.

   a)    <u>Procedural Capacity</u>

A party may prosecute a suit in the federal courts only if he is the "real party in interest," under Rule 17 of the Federal Rules of Civil Procedure. *United States v. 936.71 Acres of Land, More or Less, in Brevard Cty., State of Fla.*, 418 F.2d 551, 556 (5th Cir.1969). Rule 17 obliges the court to look to the governing substantive law to determine whether the plaintiff is the real party in interest – i.e., the party who, by the substantive law, has the right sought to be enforced. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 257 (5th Cir.1980). Here,

the relevant substantive law adopts, via 42 U.S.C. § 1988, state law rules to determine who may bring an action when a person's death is allegedly caused by the unconstitutional use of force. *Aguillard v. McGowan*, 207 F.3d 226, 231 (5th Cir. 2000); *Rhyne v. Henderson County*, 973 F.2d 386, 390-91 (5th Cir. 1992); *Roberts v. City of Shreveport*, 221 Fed. Appx. 314, 315 (5th Cir.2007).[1]

Some circuits permit the deceased victim's procedurally appropriate relatives to bring only a survival action to recover the deceased's damages. Others, including the Fifth Circuit, take a different approach and permit the procedurally appropriate relatives to assert a § 1983 claim for their own wrongful death damages. *Rhyne*, 973 F.2d at 390; *Phillips ex rel. Phillips v.*

---

[1] More precisely,
> [s]tanding under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. 42 U.S.C. § 1988(a). Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.

*Pluet v. Frasier*, 355 F.3d 381, 383–84 (5th Cir.2004) (citations omitted).

There is some mixed authority from the Fifth Circuit suggesting that "standing" to bring a § 1983 claim under a state's wrongful death or survival statutes implicates Article III and the court's subject matter jurisdiction. *See King ex rel. Chaney v. Texas Med. Bd.*, 576 Fed. Appx. 353 (5th Cir.2014) (dismissing survival action for lack of subject matter jurisdiction because plaintiff was not the rightful heir and did not enjoy standing); *Pluet, supra* (affirming "summary judgment," but dismissing the case without prejudice because plaintiff lacked standing to bring wrongful death and survival action).

More recently, however, the Fifth Circuit explained that although the "standing" label is used in both the constitutional Article III sense, and in the context of a real-party-in-interest challenge, the latter issue actually presents a merits-based question: "who, according to the governing substantive law, is entitled to enforce the right?" *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir.2017) (citation omitted). Thus, like contractual or statutory standing, a real party in interest issue does not implicate the court's subject matter jurisdiction. *Id*. Furthermore, a real party in interest challenge is an affirmative defense. *Id*. (citation omitted). Therefore, "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.2011).

*Monroe Cty., Miss.*, 311 F.3d 369, 374 (5th Cir.2002). As noted above, however, the class of persons who may bring those claims is determined by state law.

Louisiana law enumerates an exclusive hierarchy of beneficiary classes authorized to bring survival and wrongful death actions. La. Civ. Code Arts. 2315.1 & 2315.2; *see Whittington v. Hopfensitz*, 321 So.2d 836 (La. App. 1st Cir.1975) (addressing earlier version of code article). The primary class of beneficiaries includes the decedent's surviving spouse and/or children. *Id*. Therefore, the civil code affords a surviving *parent* the right to sue for the wrongful death of a child only if the decedent left no surviving spouse or child. *Trahan v. S. Pac. Co.*, 209 F. Supp. 334, 336 (W.D. La.1962) (citations omitted). Under Louisiana law a petition brought by an inferior beneficiary must negative the existence of primary beneficiaries to state a cause of action under the article. *Id*.[2]

Here, Prudhomme alleged that the decedent was his son, and that he is the proper party to seek redress under Louisiana Civil Code Articles 2315.1 and 2315.2. (Compl., ¶¶ 5, 16, & 19). The court finds that, at this time, these allegations suffice to establish Prudhomme's authority to prosecute the matter. However, as the parties are aware, there is a related suit pending before this court which was filed by Leslie Reed, the decedent's mother, and Otis McGinnis, who also claims to be the decedent's father. *See Reed v. McGinnis*, No. 17-1382 (W.D. La.). The court must consider these apparently conflicting claims of paternity, which it intends to do via separate order.

---

[2] Under Rule 9, however, a pleading need not allege a party's capacity to sue. Fed.R.Civ.P. 9(a).

6

b) <u>Sufficiency of the Allegations</u>

A local government entity or municipality cannot be held liable under § 1983 by virtue of the doctrine of respondeat superior. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985). Rather, to impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). Specifically, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread practice, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.[3] "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

The Fifth Circuit has recognized that municipalities or supervisors may face liability under § 1983 where they breach duties imposed by state or local law. *O'Quinn, supra* (citations omitted); *see also Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2–3 (E.D. La. Dec. 16, 2013) (state law determines whether a particular governmental entity has an obligation or policymaking authority). By law, the sheriff is charged with operating the parish jail and ensuring that the inmates receive proper care. *Oladipupo v. Austin*, 104 F. Supp.2d 626, 641 (W.D. La. 2000) (citing La. R.S. § 15:704); *Langley v. City of Monroe*, 582 So.2d 367, 368 (La.

---

[3] For purposes of *Monell* liability, "[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker." *Lee v. Morial*, No. 99-2952, 2000 WL 726882, at *2 (E.D. La. June 2, 2000).

App. 2d Cir. 1991) (citations omitted).  The *parish*, however, is responsible for financing and physically maintaining the jail.  *Salvagio, supra*; *see also O'QUINN, supra*; *Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir.2008) ("day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority").  Furthermore, the parish is responsible for either appointing a physician or contracting with a health care provider to attend to prisoners who are confined in parish jails.  *See Thompson v. Ackal*, No. 15-2288, 2016 WL 1371192, at *4–5 (W.D. La. Feb. 2, 2016), R&R adopted, 2016 WL 1370597 (W.D. La. Apr. 5, 2016).  Thus, the parish is responsible for all *expenses* of providing medical treatment to prisoners.  *O'QUINN, supra* (citing *Amiss v. Dumas*, 411 So.2d 1137, 1141 (La. App.1st Cir. 1982); *Arce v. Louisiana*, No. 16-14003, 2016 WL 7407223, at *4 (E.D. La. Dec. 22, 2016) (to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible).

Having said that, the instant complaint is devoid of any facts (as opposed to conclusory allegations) to support a finding that the inadequate medical care plaintiff purportedly received at the Ouachita Parish Correctional Center was the result of under-funding or derived from a *particular* policy enacted by the OPPJ.  Therefore, as it stands, the complaint fails to state a claim for relief under 42 U.S.C. § 1983.  *See O'Quinn*, 773 F.2d at 609-610; *Cevallos v. Silva*, 541 Fed. Appx. 390, 393 (5th Cir.2013) (complaint failed to allege that a policy, practice, custom, or procedure of the municipality was the moving force behind the alleged violations of his constitutional rights).

Although not directly raised by movant,[4] a variation of the same reasoning precludes plaintiff from stating a tort claim against the OPPJ. In Louisiana, the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999). Moreover, "a parish sheriff occupies a constitutional office which exists and functions independently of the governing body of the parish." *Broussard v. Boudoin*, No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004) (citing La. Const. art. 5, § 27 and La. Const. art. 6, §§ 5(G) and 7(B)). Therefore, a parish governing body cannot be liable vicariously for the acts of the sheriff or his (or her) deputies. *Foster v. Hampton*, 352 So.2d 197, 203 (La. 1977) (no vicarious liability against the parish); *Broussard, supra* (no vicarious or *Monell* liability against the parish); *Kraft v. Lee*, No. 06-2846, 2006 WL 3395592, at *3 (E.D. La. Nov. 22, 2006) (no vicarious or *Monell* liability against the parish); *Quatrevingt v. Thibodeaux*, No. 10-4047, 2011 WL 2182104, at *2 (E.D. La. May 2, 2011), *R&R adopted*, 2011 WL 2182069 (E.D. La. June 2, 2011) (plaintiff's allegation that parish was the employer of the sheriff and his deputies was incorrect under Louisiana law).

Furthermore, under Louisiana law, the customary source for delictual liability is Civil Code Article 2315. To determine whether a plaintiff may recover on a negligence claim,

---

[4] To the extent that the undersigned has expanded upon the grounds for dismissal urged by movant, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*. (emphasis added).

Of course, "[t]he threshold issue of a negligence claim starts with the first element-duty." *Id*. As discussed in the context of plaintiff's § 1983 claim, however, his complaint fails to set forth facts showing that the OPPJ owed a duty to administer adequate medical care at the correctional center. Moreover, there are no factual allegations to show that funding was insufficient, or, if it was, that it was the cause of the decedent's inadequate medical care. In short, plaintiff does not state a tort claim against the OPPJ.

Ordinarily, the court should accord plaintiff the opportunity to amend his complaint to state a claim for relief.[5] However, because the instant motion disposes of less than all claims and parties, it is not a final judgment and remains subject to revision at any time before conclusion of the case. Fed.R.Civ.P. 54(b). Under these circumstances, especially since the court is not confident that plaintiff possesses any additional information at this time, the better practice is to

---

[5] In fact, plaintiff requested such an opportunity – in the (now realized) event that the court found that his original complaint failed to state a claim for relief. However, plaintiff did not identify any additional facts that he was harboring which might have redressed his deficient allegations. Certainly, if he was aware of additional, relevant facts, he should have amended his complaint in response to defendant's motion. *See* Fed.R.Civ.P. 15(a)(1)(B).

grant the motion to dismiss, subject to plaintiff's ability to seek leave to amend his complaint and revisit the issue – if and when he uncovers facts sufficient to support a viable § 1983 and/or tort claim against the OPPJ.[6]

### Conclusion

As instructed by *Iqbal*, the court accords no weight to plaintiff's conclusory allegations in his complaint. *See Iqbal, supra*. Plaintiff's remaining allegations contain no facts sufficient to confer plausibility upon his claim for local governing body liability under § 1983 or Louisiana Civil Code Article 2315. *Id.*; *see also City of Clinton, Ark., supra*.

For the above-assigned reasons,

IT IS RECOMMENDED that the Ouachita Parish Policy Jury's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] be GRANTED, and that plaintiff's claims against said defendant only be DISMISSED, with prejudice. Fed. R. Civ. P. 12(b)(6).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[6] It goes without saying that plaintiff may not dither in his efforts.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 19th day of April 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE