UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **LASQUES (VACQUES) PRUDHOMME** | : | **CIVIL ACTION NO. 17-1344** |
| VS. | : | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL IN HIS OFFICIAL CAPACITY, ET AL.** | : | **MAG. JUDGE KAREN L. HAYES** |
| | | **(consolidated with)** |
| **LESLIE REED AND OTIS MCGINNIS** | | **CIVIL ACTION NO. 17-1382** |
| VS. | | |
| **LOUISIANA DEPARTMENT OF CORRECTIONS, ET AL.** | | |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are two motions filed by plaintiff Lasques (Vacques) Prudhomme: 1) a motion regarding paternity/filiation [doc. # 58]; and 2) a motion for sanctions, and associated request for fees [doc. # 80]. The motions are opposed. For reasons set forth below, it is recommended that the consolidated cases be unconsolidated, that the foregoing motions be denied, and that the claims of plaintiff Lasques (Vacques) Prudhomme in Civil Action No. 17-1344 be dismissed, without prejudice, as to all defendants.

### Background

On October 19, 2017, Lasques (Vacques) Prudhomme filed the instant civil rights complaint against numerous local entities and officials whom he contends are responsible for the death of his son, Brandon Jamal Reed (sometimes referred to herein as "Brandon"), while in defendants' custody as a pretrial detainee. *Prudhomme v. Russell, et al.*, No. 17-1344 (W.D.

La.).[1]  Prudhomme asserted claims for wrongful death, "deliberate indifference," and a survival action under 42 U.S.C. § 1983 stemming from violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.[2]  Meanwhile, on October 25, 2017, Leslie Reed and Otis McGinnis filed a separate wrongful death and survival action under 42 U.S.C. § 1983, as "the [mother] and [father] of the decedent, Brandon Reed."  *Reed v. La. Dept. of Corrections, et al.*, No. 17-1382 (W.D. La.).[3]

Because of the unexplained, conflicting claims of paternity to the decedent posed by these separate suits, the undersigned consolidated the cases, "at minimum, for purposes of resolving the paternity of the decedent."  (May 1, 2018, [doc. # 27]).  Following a May 9, 2018, status conference with the parties, the court granted the parties until August 16, 2018, in which to conduct discovery limited to the issue of paternity/filiation.  (May 9, 2018, Minutes [doc. # 38]).  The court also authorized any interested party to file a brief by September 6, 2018, that addressed the legal and factual questions surrounding the paternity/filiation issue *Id*.[4]  Finally, the court set a hearing for October 24, 2018, if needed, limited to the issue of paternity/filiation.  *Id*.

On October 8, 2018, plaintiff Lasques Prudhomme filed the instant motion regarding

---

[1] He sued the following defendants:  Jay Russell, Ouachita Parish Sheriff; Patrick Johnson, Warden; Donna Norman, Medical Director for Ouachita Correctional Center; the Ouachita Parish Police Jury;  Richwood Correctional Center, L.L.C. (and its owners, William K. McConnell and John Creed); Warden Ray Hanson (incorrectly sued as "Ray Henson"); Myra Russ, Medical Director (incorrectly sued as "Myra Ross"); and unknown XYZ Insurance Companies.

[2] He also alleged negligence and intentional tort claims under state law, including claims for assault and battery.  Prudhomme seeks compensatory, special, punitive, and exemplary damages, plus reasonable attorney's fees, and expenses.

[3] They sued the State of Louisiana, plus other local entities and officials.

[4] The court subsequently extended these deadlines upon motion of the parties.  (Aug. 16, 2018, Order [doc. # 56]).

paternity/filiation in which he petitioned the court for an order recognizing him as the biological and surviving father of the decedent Brandon Jamal Reed, entitled to bring the instant suit. In support of his motion, Prudhomme submitted, *inter alia*, an affidavit from Leslie Reed McGinnis which included her attestation and stipulation that Lasques Prudhomme was the biological father of "their" deceased son Brandon Jamal Reed. (Affidavit of Leslie Reed; Pl. Motion, Exh. A [doc. # 59]). Prudhomme also invoked certain factual allegations of paternity that he set forth in his May 16, 2018, amended complaint. (Pl. Amend. Compl. [doc. # 41]).

On October 15, 2018, defendants, Richwood Correctional Center, LLC; William K. McConnell; Warden Ray Hanson; Myra Russ; and Johnny Creed (collectively, "Richwood"), filed a response to Prudhomme's motion wherein they argued that Prudhomme had not met his burden of establishing by a preponderance of the evidence that he was Brandon's biological father. (Defs. Resp. [doc. # 61]). Accordingly, Richwood urged the court to "not allow Prudhomme's wrongful death and survival suits to move forward." *Id*.

Prudhomme filed a reply brief on October 19, 2018. (Reply [doc. # 65]). Richwood filed a sur-reply on October 24, 2018, arguing that Prudhomme's present attempt to assert an avowal action was unavailing because the right to bring the action had been extinguished via peremption. (Defs. Sur-Reply [doc. # 70]). Richwood explained that because Otis McGinnis had signed Brandon's birth certificate, Otis was presumed to be Brandon's father.[5] *Id*. As a result, Prudhomme was required to bring an avowal action within one year of Brandon's birth. *See* La. Civ. Code Art. 198. Because Prudhomme did not timely file an avowal action, Richwood again argued that "Prudhomme's wrongful death and survival suits should not be allowed to move

---

[5] Richwood adduced a copy of Brandon's birth certificate that Otis McGinnis had signed on the line indicating that he was Brandon's father. (Birth Cert.; Defs' Exh. 1 [doc. # 71]). Brandon was born in December 1988. *Id*.

forward." (Defs. Sur-Reply).

On October 24, 2018, the undersigned held a hearing on the issue of paternity/filiation. (Minutes [doc. # 73]). Nine witnesses testified at the hearing, including Lasques Prudhomme and Leslie Reed. (Witness List [doc. # 75]). Of note, Leslie Reed testified that she was "not for sure which one of them is the father." (Hearing Transcript, pgs. 111-112 [doc. # 78]). Reed explained that she signed the affidavit attesting to Prudhomme's status as Brandon's biological father because she was "not for sure," who the father was. *Id*. Reed further testified that she and McGinnis were married in 1990. *Id*., pg. 118. She later stated that she believed that her husband, Otis, was the biological father of Brandon. *Id*., pg. 126.

Lasques Prudhomme testified that he had had an eight month relationship with Reed, and that she had told him that she was pregnant with his child. *Id*., pgs. 133-134. Prudhomme first saw Brandon when he was six years old. *Id*., pgs. 137-138. Prudhomme knew that he had a son prior to that time, but he was not permitted to talk to him. *Id*.

On November 7, 2018, Prudhomme filed the instant motion for sanctions against Leslie Reed McGinnis on the basis that she provided fraudulent and perjurous statements at the October 24 hearing when she stated that she was "not for sure" whether Prudhomme was Brandon's biological father. (M/Sanctions [doc. # 80]). Prudhomme prayed for an order: a) dismissing the suit filed by Leslie and Otis McGinnis; b) referring the matter for possible criminal prosecution; c) striking Leslie Reed's testimony from the record; d) preventing Reed or Otis McGinnis from re-offering Reed's testimony; e) awarding Prudhomme reasonable attorney's fees and costs in defending against Reed and McGinnis's claim of filiation/paternity; and f) allowing a finding of fraud against Reed and McGinnis at the final trial in this case.

On November 15, 2018, Reed and McGinnis filed a post-hearing memorandum wherein

they argued that the domestic relations exception to federal court jurisdiction precluded this court from entertaining Prudhomme's avowal action. (Pl. Memo. [doc. # 82]). Reed and McGinnis further argued that Prudhomme's avowal action/motion was untimely. *Id*.

Richwood also filed its post-hearing brief on November 15, 2018, in which it reiterated that Prudhomme's attempted avowal action was untimely. (Defs. Post Trial Memo. [doc. # 83]). Richwood further argued that Reed's testimony had called into question McGinnis's claim to be Brandon's father. *Id*. Moreover, Richwood emphasized that neither complaint filed by Prudhomme or McGinnis included requisite allegations to place defendants on notice that an avowal action was asserted. *Id*. Richwood concluded that, following the hearing, neither Prudhomme or McGinnis established that either was Brandon's father. *Id*.

On November 15, 2018, Prudhomme filed his post-hearing brief, and argued that the allegations in his original complaint sufficed to set forth an avowal action. (Pl. Brief [doc. # 85]). He reviewed the hearing testimony and evidence, and asked the court to rule that "he is the only biological father of the decedent, Brandon Reed." *Id*.

On November 21, 2018, Reed and McGinnis filed an opposition to Prudhomme's motion for sanctions. (Pl. Opp. [doc. # 85]). Prudhomme did not file a reply, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 81]. Therefore, the matter is ripe.

## **Analysis**

A party may prosecute a suit in the federal courts only if he is the "real party in interest," under Rule 17 of the Federal Rules of Civil Procedure. *United States v. 936.71 Acres of Land, More or Less, in Brevard Cty., State of Fla.*, 418 F.2d 551, 556 (5th Cir.1969). Rule 17 obliges the court to look to the governing substantive law to determine whether the plaintiff is the real party in interest – i.e., the party who, by the substantive law, has the right sought to be enforced.

5

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 257 (5th Cir.1980). Here, the relevant substantive law adopts, via 42 U.S.C. § 1988, state law rules to determine who may bring an action when a person's death is allegedly caused by the unconstitutional use of force. *Aguillard v. McGowan*, 207 F.3d 226, 231 (5th Cir. 2000); *Rhyne v. Henderson County*, 973 F.2d 386, 390-91 (5th Cir. 1992); *Roberts v. City of Shreveport*, 221 Fed. Appx. 314, 315 (5th Cir.2007).[6]

---

[6] More precisely,

[s]tanding under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. 42 U.S.C. § 1988(a). Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.

*Pluet v. Frasier*, 355 F.3d 381, 383–84 (5th Cir.2004) (citations omitted).

There is some mixed authority from the Fifth Circuit suggesting that "standing" to bring a § 1983 claim under a state's wrongful death or survival statutes implicates Article III and the court's subject matter jurisdiction. *See King ex rel. Chaney v. Texas Med. Bd.*, 576 Fed. Appx. 353 (5th Cir.2014) (dismissing survival action for lack of subject matter jurisdiction because plaintiff was not the rightful heir and did not enjoy standing); *Pluet, supra* (affirming "summary judgment," but dismissing the case without prejudice because plaintiff lacked standing to bring wrongful death and survival action).

More recently, however, the Fifth Circuit explained that although the "standing" label is used in both the constitutional Article III sense, and in the context of a real-party-in-interest challenge, the latter issue actually presents a merits-based question: "who, according to the governing substantive law, is entitled to enforce the right?" *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir.2017) (citation omitted). Thus, like contractual or statutory standing, a real party in interest issue does not implicate the court's subject matter jurisdiction. *Id*.

Furthermore, a real party in interest challenge is an affirmative defense. *Id*. (citation omitted). Therefore, "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.2011). However, if evidence outside of the pleadings is presented to the court and used in deciding a 12(b)(6) or 12(c) motion, the motion must be converted to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Knighton v. Merscorp Inc.*, 304 Fed. Appx. 285, 287 (5th Cir. 2008) (unpubl.) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir.1993)). In the event of conversion, Rule 12(d) requires that all parties be afforded a reasonable opportunity to present all material pertinent to a motion for summary judgment. *Id*. Here, the court accorded the parties ample notice, time to conduct discovery, and opportunity to

To recover under a claim for wrongful death and survival under Louisiana law, a plaintiff must fall within an exclusive hierarchy of beneficiary classes under Civil Code Articles 2315.1 and 2315.2. *Udomeh v. Joseph*, 103 So.3d 343, 346 (La. 2012). "When the decedent leaves no surviving spouse or child, the decedent's surviving father and mother are the proper beneficiaries to bring a wrongful death and survival action." *Id*.[7]

Courts look to the filiation provisions of the Civil Code to determine the proper beneficiaries for wrongful death and survival actions. *Udomeh*, 103 So.3d at 346. "Children include "those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law . . ." La. Civ. Code Art. 3506. Filiation is the legal relationship between a child and his parent, and is established by proof of maternity, paternity, or adoption. La. Civ. Code Arts. 178, 179. In order for a child to be filiated to a man, he must be presumed to be the child of that man, or adjudged to be a child of that man. J. R. Trahan, *Glossae on the New Law of Filiation*, 67 La. L. Rev. 387, 424 (2007).

"A putative father must file a timely avowal action in order to maintain a wrongful death and survival action for the death of his illegitimate child." *Udomeh*, 103 So.3d at 348. "Prior to 2004, the Civil Code did not provide a process for a biological father to establish parentage of his illegitimate child." *Udomeh, supra*. Thus, the courts recognized the avowal action whereby a biological father could establish his paternity. *Id*. (citation omitted). In 2004, the Louisiana Legislature enacted former Article 191, which permitted a man to establish his paternity of a child, even if the child was presumed to be the child of another man.

---

be heard.

[7] Plaintiffs were not aware of a surviving spouse or child of the decedent. *See* Compl., ¶ 12 in No. 17-1382.

*Id*. In 2005, the Legislature comprehensively revised Title VII of Book I of the Civil Code, regarding the law of filiation, and replaced Article 191 with Article 198, which provides that,

> [a] man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.
>
> If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.
>
> In all cases, the action shall be instituted no later than one year from the day of the death of the child.
>
> The time periods in this Article are peremptive.

La. Civ. Code Art. 198.

Thus, under Article 198, Prudhomme needed to file an avowal action: 1) within one year from Brandon's birth (absent the mother's bad faith) – *if* Brandon is presumed to be the child of another man, or 2) no later than one year from Brandon's death.[8] Prudhomme, however, failed to file an avowal action within either deadline.

Article 195 provides that, "[a] man who marries the mother of a child not filiated to another man and who, with the concurrence of the mother, acknowledges the child by authentic act is presumed to be the father of that child." La. Civ. Code Art. 195.[9] Otis McGinnis married

---

[8] Article 198's peremptive periods apply retroactively to children born before its enactment. *See Udomeh, supra* (applied Article 198 where decedent child was born in 1997); *Burkette v. Gen. Motors, LLC*, 179 So.3d 799 (La. App. 4th Cir. 2015) (applied Article 198 where decedent child was born in 1986). Even if Article 198 does not apply retroactively, that does not affect the outcome in this case. Before the legislature enacted former Article 191, an avowal action still needed to be brought promptly. *Parker v. Buteau*, 746 So.2d 127, 129 (La. App. 3d Cir. 1999).

[9] There is no requirement that the subsequent marriage and acknowledgment take place in any particular order. *Trahan, supra* at 427.

8

Brandon's mother in 1990; there is no evidence that Brandon was filiated to another man at that time; and Otis signed Brandon's birth certificate.[10] Furthermore, Brandon's mother apparently concurred with McGinnis's acknowledgment because there is no indication that she challenged, either at that time or within a reasonable time thereafter, McGinnis's signing of the birth certificate as Brandon's father.[11] Accordingly, Otis McGinnis is presumed to be the father of Brandon, who, in turn, is filiated to him.

Because Brandon is presumed to be McGinnis's child, Prudhomme was required to file an avowal action within one year of Brandon's birth.[12] This, he failed to do. (Tr. pg. 154). Therefore, any attempted avowal action at this point is perempted, and no longer exists. *See Thomas v. Ardenwood Properties*, 43 So.3d 213, 217 (La. App. 1st Cir. 2010) (statutes of peremption destroy the cause of action, so that after the limit of time expires, the cause of action

---

[10] Prior to the 2016 revision, Article 195 formerly permitted acknowledgment by authentic act or "by signing the birth certificate." La. Civ. Code Art. 195 (2005). According to the comments, "[f]ormal acknowledgments that were accomplished in this manner prior to the effective date of the 2016 revision will therefore remain effective." *Id*. (Revision Comments – 2016). Although revision comments are not law, they are instructive. *Chalos & Co., P.C. v. Marine Managers, Ltd.*, No. 14-2441, 2015 WL 6442558, at *7 (E.D. La. Oct. 23, 2015).

[11] Although the concurrence shall be by "juridical act," *see* Art. 195 (Revision Comments – 2005, Comment (e)), there is nothing to suggest that a "juridical act" must be in writing. *See Boyter v. Shreveport Bank & Tr.*, 65 B.R. 944, 951 (W.D. La.1986) (Article 2347, which requires the concurrence of spouses, neither requires the spouse's signature, nor does it contain an exception for transactions not required to be reduced to writing); *see also* Trahan, *supra* at 426. (concurrence may be oral or even implied).

[12] Application, in this case, of the one year from birth deadline in Article 198's second paragraph produces the anomalous result that Prudhomme's avowal action was perempted retroactively when McGinnis married Brandon's mother some two years after Brandon's birth. However, Article 198 does not make an exception under these circumstances. Moreover, the short period of time to bring an avowal action apparently stems from concerns about disrupting or destroying intact families. *See* Trahan, *supra* at 446–47. Here, Prudhomme testified that Brandon's mother told him that she was pregnant with his child. Therefore, he knew of his potential paternity, and could have brought a timely avowal action to recognize his paternity.

no longer exists).[13]

Prudhomme also did not file an avowal action within one year of the date of Brandon's death on October 26, 2016. Relying upon Louisiana state law pleading standards and decisions, *see e.g., Udomeh, supra*, Prudhomme argues that the original complaint filed in this case on October 19, 2017, included sufficient facts to set forth an avowal action. Of course, *federal* pleading standards apply to suits filed in federal court. Therefore, Louisiana state court decisions applying Louisiana procedural law are not binding on this court.

A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). "The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Moreover, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 131 S.Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). In the end, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (quoting

---

[13] Even if it could be argued that Brandon's mother deceived Prudhomme, in bad faith, regarding his paternity, Prudhomme knew that he was Brandon's father the first time that he saw him at age six, which would have been circa 1994. (Tr. 153-154). Again, however, Prudhomme did not initiate an avowal action within one year thereafter. *Id*.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1958 (2007)).

Here, the requests for relief in Prudhomme's original complaint did not seek any type of determination that he was Brandon's father. Further, aside from asserting that Brandon was his "son," Prudhomme's original complaint did not set forth facts that would intimate or support an avowal action.[14] In other words, there is nothing in the complaint to provide defendants with "fair notice," of such a claim. Indeed, until the court raised the issue of conflicting claims to Brandon's paternity, there is no indication that any party, including plaintiff, anticipated an avowal action. *See* M/Dismiss [doc. # 6]; Answer [doc. # 4]. Once the court raised the paternity issue, plaintiff amended his complaint in May 2018 to allege facts to support an avowal action. (Pl. Amend. Compl., [doc. #s 39-41]). There would have been no need to amend if plaintiff believed that his original complaint sufficed to state an avowal action. However, by that time – following expiration of the peremptive period – his action for paternity no longer existed. *Thomas, supra*. Accordingly, the amendment cannot relate back to the filing of the original complaint. *Id.*, Fed.R.Civ.P. 15(c)(1); *D & S Marine Transp., L.L.C. v. S & K Marine*, L.L.C., No. 14-2048, 2015 WL 5838220, at *2–4 (E.D. La. Oct. 7, 2015) (amended complaint asserting perempted claim does not relate back); *Bens Bros., LLC v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. 06-5048, 2007 WL 3488205, at *3 (E.D. La. Nov. 13, 2007) (supplemental complaint asserting perempted claim does not relate back).

Even if the court were to find that Prudhomme had asserted a timely avowal action in this

---

[14] In *Udomeh*, the Louisiana Supreme Court found that plaintiff had set forth the material facts necessary for an avowal action. *Udomeh, supra*. In that case, however, plaintiff alleged in his complaint that he was the decedent's "biological" father, and that he had "maintained an active role as father in his son's life . . ." *Id*.

case, he still did not meet his burden of proof at the hearing.[15] As a general rule, paternity under Civil Code Article 198 may be established by any relevant evidence, including the same type of evidence used by a child to prove paternity under Article 197. La. Civ. Code Art. 198 (Revision Comments – 2005, Comment (b)).[16] "Examples of relevant evidence to establish paternity include blood tests, an informal acknowledgment, and cohabitation of the mother and father at the time of conception." *Williams, supra*. The following factors also are relevant:

> [w]hether the mother and alleged father had a relationship during which they engaged in sexual intercourse; the mother was not having sexual relations with other men and that no one else could be the father; her belief that the defendant was the father; the approximate date of conception in relation to the time of the sexual relationship; the child's birth date; and the alleged father's informal acknowledgment of the child through financial aid and statements made, both verbal and through his conduct.

*State, Dep't of Soc. Servs. v. Matthews*, 688 So.2d 137, 141 (La. App. 5th Cir. 1997) (citation omitted).

Although no one factor is sufficient alone, consideration of several of these factors may constitute a preponderance of the evidence. *Id*.

---

[15] Under the domestic-relations exception, federal courts lack jurisdiction to "issue divorce, alimony, and child custody decrees." *Estate of Merkel v. Pollard*, 354 Fed. Appx. 88, 92 (5th Cir.2009) (citation omitted). This exception to federal jurisdiction is founded on "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." *Rogers v. Janzen*, 891 F.2d 95, 97–98 (5th Cir.1989) (citation omitted). Because none of the concerns behind the domestic relations exception are present in this case (the "child" is deceased), the court necessarily finds that the exception is inapplicable. *See Crouch v. Crouch*, 566 F.2d 486, 487–88 (5th Cir.1978). Furthermore, the exception "obtains from the diversity jurisdiction statute . . . and therefore it has no application where, as here, there exists an independent basis for federal jurisdiction." *Estate of Merkel, supra* (citation omitted); *see also Thomas v. State*, No. 17-0348, 2018 WL 1308275, at *12 (N.D. Tex. Feb. 13, 2018), R&R adopted, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) ("The domestic relations exception does not apply to the court's consideration of federal question jurisdiction.").

[16] Paternity or filiation is an issue of law. *Williams v. Bd. of Sup'rs of Univ. of Louisiana Sys.*, 135 So.3d 804, 821 n.12 (La. App. 2d Cir. 2014 (citations omitted).

At the hearing, there was little question that Prudhomme firmly believed that he was Brandon's biological father. Consistent with his conviction, Prudhomme held Brandon out as his son, provided at least some material and financial support for him, spent time with him, and invited Brandon to participate in family events and gatherings at Prudhomme's house. Prudhomme even paid for Brandon's funeral. (Tr. 145). In addition, Prudhomme adduced photographs which discernable physical resemblance between Prudhomme and Brandon.

Ultimately, Prudhomme's belief that Brandon was his son may be reduced to two circumstances: 1) Brandon's mother, Leslie Reed, purportedly told him that he was Brandon's father; and 2) he was convinced that Brandon was his son after he initially saw him when he was six years old. (Tr. 150). As evidenced by Prudhomme's motion for sanctions, however, Leslie Reed's averments and testimony have been less than consistent. As stated earlier, Reed executed an affidavit on September 6, 2018, stipulating that Prudhomme was Brandon's biological father. At the hearing, however, Reed testified that she had relations with both McGinnis and Prudhomme around the same time, and therefore, did not know which man was Brandon's father. *See* Tr. 114-115. Consequently, she told both of them that she was pregnant. *Id*. Reed also stated at the hearing that she believed that Otis McGinnis was Brandon's biological father. (Tr. 126). Reed explained that she signed the recent affidavit because she was not sure who Brandon's father was. In other words, because Reed did not know who Brandon's father was, she was unable to contest the statement in the affidavit, and therefore, signed it.

In light of Reed's inconsistent statements regarding paternity, the court cannot accord significant weight to her alleged representation to Prudhomme in 1994 that he was Brandon's father. At that time, she might have been motivated to persuade Prudhomme that he was Brandon's father in order to receive financial support from him. Further, Otis McGinnis did not

13

appear at the hearing held in this matter, and therefore, did not express his opinion regarding paternity. Moreover, Prudhomme testified that he never had a conversation with McGinnis concerning Brandon's paternity. (Tr. 139).

The court also is hesitant to assign significant weight to the physical resemblance between Prudhomme and Brandon. While offspring frequently resemble their biological parents, sometimes they do not. Similarly, unrelated persons sometimes physically resemble each other. Further, because McGinnis did not appear at the hearing, it is reasonably possible that Brandon also resembled him. In sum, while Mr. Prudhomme clearly believed that Brandon was his biological son and treated him as such, the court is not persuaded that he established same by a preponderance of the evidence.

In its latest brief, Richwood argued that Otis McGinnis also failed to establish his paternity. However, by marrying Reed and signing Brandon's birth certificate as his father, McGinnis filiated Brandon. While an acknowledgment of paternity in the absence of a biological relationship is a nullity,[17] Richwood, like Prudhomme, failed to establish that McGinnis is not Brandon's biological father.

Finally, Prudhomme urges the court to sanction Leslie Reed because her inconsistent statements regarding Brandon's paternity establish that she committed perjury. In addition to referencing Reed's own inconsistent statements, Prudhomme adduced an affidavit executed by Michael Tolliver who attested that he heard Reed tell her attorney that Prudhomme was Brandon's biological father. (Affidavit of M. Tolliver; M/Sanctions, Exh. B). However, for the same reason that Reed proffered to explain why she signed the affidavit, i.e., that she did not

---

[17] *Rousseve v. Jones*, 704 So.2d 229, 233 (La. 1997); *Succession of Robinson*, 654 So.2d 682, 684 (La. 1995).

actually know who Brandon's father was, and therefore could not rule out that Prudhomme was his father, also could explain why she made that statement to her attorney.

Criminal perjury requires proof that the "witness g[ave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Laury*, 985 F.2d 1293, 1308 (5th Cir.1993); *see also* 18 U.S.C. § 1623.  Should a federal judge develop a reasonable basis for believing that the criminal act of perjury has occurred, then the judge is to refer the matter to the United States Attorney for handling by the executive branch of the government.  *In re Actos (Pioglitazone) Products Liab. Litig.*, No. 12-0064, 2014 WL 2624943, at *5 (W.D. La. June 11, 2014).  Given Ms. Reed's self-professed, and apparent, confusion, the court does not have a reasonable basis for concluding that she committed perjury.[18]  For this same reason, the court finds that the imposition of civil sanctions is not warranted, at this time.  *Contrast Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir.2011) (where the court dismissed complaint upon a finding of perjury).

## Conclusion

For the above-assigned reasons, the court finds that Lasques Prudhomme is not the real party in interest to prosecute the instant wrongful death and survival action asserted under federal and state law.[19]  As such all defendants in the case are entitled to judgment as a matter of law,

---

[18] Of course, plaintiff's counsel, herself, may present these facts to the U.S. Attorney for the Western District of Louisiana for further investigation, development, and prosecution, as warranted.

[19] Normally, dismissal for failure to prosecute in the name of the real party in interest is not warranted until after a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted in the action.  Fed.R.Civ.P. 17(a)(3).  The court need not delay dismissal here, however, because the real parties in interest already are prosecuting a separate suit.  *See* Civil Action No. 17-1382.

dismissing Prudhomme's claims against them. Fed.R.Civ.P. 56.[20]

Accordingly,

IT IS RECOMMENDED that the instant cases, Civil Action Nos. 17-1344 and 17-1382, be UNCONSOLIDATED.

IT IS FURTHER RECOMMENDED that plaintiff Lasques (Vacques) Prudhomme's motion for sanctions, and associated request for fees [doc. # 80] be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff Lasques (Vacques) Prudhomme's motion regarding paternity/filiation [doc. # 58] be DENIED, and that his federal and state claims against all defendants be DISMISSED, without prejudice, thereby closing Civil Action No. 17-1344. Fed.R.Civ.P. 56.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

---

In addition, although a real party in interest challenge typically is raised by defendants, the courts may raise the issue sua sponte, especially where, as here, the court was presented with two cases with two different individuals claiming to be the father of the decedent. *See Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir.1993) (court may invoke Rule 17(a) sua sponte); *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 281-82 (5th Cir. 2001) (court may raise affirmative defense of res judicata where both actions were brought before the same court).

[20] The court possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995) (unpubl.). A report and recommendation provides sufficient notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)). Further, where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of other co-defendants *Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001).

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 17th day of December 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE